In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE
JAMES P. BICK, ) No. ED108992
 )
 Appellant, )
 ) Appeal from the Circuit Court
 ) of St. Louis County
 vs. ) Cause No. 19SL-AC07060
 )
LEGACY BUILDING MAINTENANCE )
COMPANY LLC AND WILLIAM ROSTAD, ) Honorable John R. Lasater
 )
 Defendants, )
 )
 and )
 )
LUIS ZAMBRANA, )
 )
 Respondent. ) Filed: March 30, 2021

 OPINION

 I. Introduction

 James P. Bick (“Appellant”) appeals the dismissal of his petition against Luis Zambrana

(“Respondent”) for lack of personal jurisdiction. In his sole point on appeal, Appellant argues the

trial court erred in dismissing the case against Respondent for lack of personal jurisdiction

because Respondent engaged in sufficient contacts in accordance with Missouri’s long-arm

statute and had sufficient minimum contacts with Missouri to satisfy due process. We reverse

and remand.

 1
 II. Factual and Procedural Background

 On October 4, 2018, Appellant’s law firm (“B&K”) entered into a contract with Legacy

Building Maintenance Company, LLC (“Legacy”) to change the form of Legacy from a Missouri

corporation to a Missouri limited liability company. The contract was signed by William Rostad

(“Rostad”) and Respondent in their capacities as chief executive officer and president of Legacy,

respectively. After fulfilling the agreed upon legal services, a balance of $8,003.37 was owed to

Appellant. Appellant repeatedly demanded payment of the balance due, but no payment was

rendered.

 Consequently, Appellant filed a lawsuit for breach of contract (Count I) and piercing the

corporate veil (Count II), naming Legacy, Respondent, and Rostad as defendants. Therein,

Appellant provided that B&K is a Missouri professional corporation with its principal place of

business in St. Louis County, Missouri; Legacy is a limited liability company in the State of

Missouri; Respondent is an individual residing in Riverside County, California; and Rostad is an

individual residing in Pulaski County, Missouri. Appellant asserted that jurisdiction and venue

were appropriate in Missouri because the contract was entered into in St. Louis County,

Missouri. In Count I, Appellant alleged that B&K and Legacy entered into a contract whereby

B&K agreed to provide, and Legacy agreed to pay for, certain legal services; pursuant to the

terms of the contract, B&K provided all necessary legal services to Legacy; and there remains a

balance of $8,003.36 owed by Legacy. Count II sought to pierce the corporate veil of Legacy to

hold Respondent and Rostad personally liable for the debt. Appellant alleged that Respondent

and Rostad maintained complete control and domination over Legacy; Legacy was a mere

instrument of Respondent and Rostad with no separate mind or will of its own; Legacy had no

operating agreement and observed no corporate formalities, rather Zambrana and Rostad

 2
dominated Legacy’s finances, policy, and business practices and used Legacy as a part of a false

and fraudulent scheme to defraud creditors, including B&K; Respondent and Rostad

intentionally undercapitalized Legacy in order to avoid its creditor (B&K); and as a direct and

proximate result of Respondent’s and Rostad’s abuse of Legacy’s corporate form, B&K was

injured in the amount of $8,003.37.

 Legacy and Rostad did not file an answer, and consequently default judgments were

entered against both parties. Respondent filed a motion to dismiss for lack of personal

jurisdiction. Appellant filed his response to the motion along with an affidavit. After the trial

court heard arguments on the motion, it dismissed the case against Respondent for lack of

personal jurisdiction.

 This appeal follows.

 III. Standard of Review

 We review a trial court’s dismissal of a case for lack of personal jurisdiction de novo.

Andra v. Left Gate Prop. Holding, Inc., 453 S.W.3d 216, 224 (Mo. banc 2015). In reviewing the

trial court’s decision, we evaluate “personal jurisdiction by considering the allegations contained

in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke

Missouri’s long-arm statute and support a finding of minimum contacts with Missouri sufficient

to satisfy due process.” Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 231 (Mo.

2010). We may also consider affidavits that were properly filed in connection with the motion to

dismiss. Id.

 IV. Discussion

 In his sole point on appeal, Appellant asserts that the trial court erred in dismissing

Appellant’s petition for lack of personal jurisdiction over Respondent because Appellant pleaded

 3
a sufficient cause of action that alleged that Respondent was doing business in Missouri and

engaging in tortious acts, and Respondent had sufficient minimum contacts with Missouri to

satisfy due process. Specifically, Appellant contends that the trial court misconstrued the petition

because the default judgment against Legacy conclusively resolved the breach of contract claim.

Therefore, Appellant argues, the issue was not whether Respondent individually entered into a

contract in his personal capacity with B&K, but rather whether Respondent’s individual actions

made him responsible for that debt. Because of the nature of the arguments, we will first discuss

the distinction between the theories of agency and piercing the corporate veil and then proceed to

the issue of personal jurisdiction.

 Analysis

 In support of his motion to dismiss,1 Respondent relied solely on State ex rel. Wills v.

DePriest, 486 S.W.3d 459 (Mo. App. E.D. 2016) (“DePriest”) to advance the argument that

Respondent’s actions in connection with the contract for legal services were made in “a

representative capacity, not in his personal capacity, on behalf of a disclosed principal, [Legacy]”

and therefore the trial court lacked personal jurisdiction over Respondent. After the trial court

heard arguments on the motion to dismiss, it found that DePriest was “on point and persuasive”

and granted the motion dismiss.

 In DePriest, a limited liability company’s (“LLC”) owners entered into a purchase

contract with plaintiff for six domes. Id. at 460. After the LLC failed to render payment for the

contracted domes, the plaintiff filed a lawsuit for breach of contract and related claims in St.

Louis County, naming as defendants the LLC and its owners personally, who were out-of-state

residents. Id. The owners filed a motion to dismiss, seeking to be discharged from the suit for

1
 Respondent filed a motion to file his brief out of time, which our Court denied. Consequently, the tendered brief
was stricken.

 4
lack of personal jurisdiction. Id. The trial court denied the motion based on the fact that one of

the documents memorializing the transaction contained the owner’s initials on each page without

a reference as to their representative capacity. Id. In reviewing the document at issue, our Court

highlighted that the owners initialed each page and, in the signature page, they included their

respective signature only once under the the notation “Duly Authorized Representatives.” Id.

460–61. Our Court held that the owners’ signatures and initials on the document did not manifest

a clear and explicit intent to bind the LLC’s owners in their personal capacities; therefore, the

trial court lacked personal jurisdiction over the owners. Id. at 462.

 In the present case, DePriest is distinguishable in that Appellant did not assert a theory of

agency, but rather Appellant sought to hold Respondent personally liable for the outstanding debt

by piercing the corporate veil. It is important to point out that the use of the term agent in the

context of piercing the corporate veil can cause confusion with pure agency theory, however, the

theories are separate and distinct and used in distinctly different situations. See Blanks v. Fluor

Corp., 450 S.W.3d 308, 377 (Mo. App. E.D. 2014); see also Saidawi v. Giovanni’s Little Place,

Inc., 987 S.W.2d 501, 504–05 (Mo.App. E.D. 1999) (holding piercing the corporate veil is an

independent claim). That Missouri courts may have blurred or confused the two theories of

liability is no surprise; the trial court would not be the first or only court to do so. Blanks, 450

S.W.3d at 380.

 “Ordinarily, a corporation is regarded as a separate legal entity, separate and distinct from

its stockholders, officers, and directors, with separate and distinct liabilities and obligations.”

Commonwealth Land Title Ins. Co. v. Miceli, 480 S.W.3d 354, 370 (Mo. App. E.D. 2015)

(internal citation omitted). However, “[p]iercing the corporate veil is an equitable doctrine used

by the courts to look past the corporate form and impose liability upon owners of the corporation

 5
. . . when the owners create or use the corporate form to accomplish a fraud, injustice, or some

unlawful purpose.” Blanks, 450 S.W.3d at 375. In order to pierce the corporate veil, whereby a

court may disregard a corporate entity and hold its owners personally liable for corporate debts,

the plaintiff must plead and demonstrate:

 1) Control, not mere majority or complete stock control, but complete domination,
 not only of finances, but of policy and business practice in respect to the
 transaction attacked so that the corporate entity as to this transaction had at the
 time no separate mind, will or existence of its own; and
 2) Such control must have been used by the corporation to commit fraud or
 wrong, to perpetrate the violation of statutory or other positive legal duty, or
 dishonest and unjust act in contravention of plaintiff's legal rights; and
 3) The control and breach of duty must proximately cause the injury or unjust loss
 complained of.
66, Inc. v. Crestwood Commons Redevelopm’t Corp., 998 S.W.2d 32, 40 (Mo. banc 1999)

(internal emphasis removed). A court can “pierce the corporate veil” when actual fraud is shown,

when a corporation is undercapitalized, or when the corporation’s assets are stripped to avoid

creditors. Mobius Mgmt. Sys., Inc. v. W. Physician Search, L.L.C., 175 S.W.3d 186, 188–89 (Mo.

App. E.D. 2005).

 In the present case, Movant pleaded all of the above-mentioned elements in his petition.

Specifically, Appellant alleged that Rostad and Respondent exercised dominion and control over

Legacy and intentionally undercapitalized the corporation for the unlawful purpose of avoiding

their debt to their creditor, B&K. See generally Edward D. Gevers Heating & Air Conditioning

Co. v. R. Webbe Corp., 885 S.W.2d 771, 774–75 (Mo. App. E.D. 1994) (finding petition seeking

to have sole officers, directors, and shareholders of corporation held liable for debts of

corporation sufficiently pleaded alter ego theory). Since Appellant obtained a judgment against

Legacy, he sought to pierce the corporate veil to hold Respondent personally liable for the

outstanding debt. See generally Sansone v. Moseley, 912 S.W.2d 666, 668–70 (Mo. App. W.D.

 6
1995) (stating that creditor was entitled to pierce corporate veil and hold shareholder personally

liable for judgment obtained against corporation). Respondent’s motion for dismissal does not

offer any arguments in support of dismissing Count II relating to piercing the corporate veil.

Instead, Respondent focused on the inapplicable agency theory. Thus, the trial court erred in

relying on DePriest and essentially adopting the argument that it lacked personal jurisdiction

over Respondent because he was an agent of Legacy and signed the contract in his representative

capacity as president of Legacy.

 Consequently, our analysis does not focus on the agency theory. Instead, we review the

trial court’s dismissal of the case de novo to determine if Appellant met his burden of

establishing that Respondent had sufficient contacts with Missouri to be subjected to personal

jurisdiction in Missouri. See Andra, 453 S.W.3d at 224. “Personal jurisdiction refers quite simply

to the power of a court to require a person to respond to a legal proceeding that may affect the

person’s rights or interests.” State ex rel. Cedar Crest Apartments, LLC v. Grate, 577 S.W.3d

490, 493 (Mo. banc 2019) (quoting State ex rel. Bayer Corp. v. Moriarty, 536 S.W.3d 227, 230–

31 (Mo. banc 2017)). When personal jurisdiction is contested, the plaintiff bears the burden of

establishing that the defendant’s contacts with the forum state were sufficient. Bryant, 310

S.W.3d at 231. Where, as in this case, the motion to dismiss for lack of personal jurisdiction is

based on facts not appearing in the record, a trial court may consider affidavits presented by the

parties and may believe or disbelieve any statements made within those affidavits. Consol. Elec.

& Mechanicals, Inc. v. Schuerman, 185 S.W.3d 773, 776 (Mo. App. E.D. 2006); Good World

Deals, LLC. v. Gallagher, 554 S.W.3d 905, 910 (Mo. App. W.D. 2018). Missouri courts employ

the following two-prong test to evaluate personal jurisdiction over nonresident defendants: the

defendant’s conduct must fall within Missouri’s long-arm statute, and the defendant must have

 7
sufficient minimum contacts with Missouri to satisfy due process. Andra, 453 S.W.3d at 225.

Missouri’s long- arm statute, in pertinent part, provides:

 1. Any person or firm, whether or not a citizen or resident of this state, or any
 corporation, who in person or through an agent does any of the acts enumerated in
 this section, thereby submits such person, firm, or corporation, and, if an
 individual, his personal representative, to the jurisdiction of the courts of this state
 as to any cause of action arising from the doing of any of such acts:

 (1) The transaction of any business within this state;
 (2) The making of any contract within this state;
 (3) The commission of a tortious act within this state;
 (4) The ownership, use, or possession of any real estate situated in this state;
 ….

§ 506.500.1.2

 In making its decision, the trial court considered the arguments of both parties, the

petition, the motion to dismiss, and Appellant’s response and affidavit.3 On appeal, Appellant

argues that he alleged that Respondent transacted business and committed a tort in Missouri.

First, attached to his response to the motion to dismiss, Appellant filed an affidavit asserting that

Respondent retained his services and Appellant conducted all of the required legal services,

including hiring additional counsel in Missouri (at the instruction of Respondent) to ensure

timely completion of all the requested legal services. He also provided that Respondent sent

numerous e-mails and made phone calls directly to Appellant while he was in the State.

Respondent’s contacts in the State constitute the transaction of business in Missouri. See Watlow

Elec. Mfg. Co. v. Sam Dick Indus., Inc., 734 S.W.2d 295, 297–98 (Mo. App. E.D. 1987) (finding

that nonresident chief engineer contacts in the state constituted the transaction of business in

2
 All references are to Mo. Rev. Stat. Cum. Supp. 2019.
3
 The record reflects that Respondent did not refute any of the assertions made in Appellant’s affidavit. Additionally,
at the hearing, Appellant pointed out to the trial court that Respondent made “a number of factual assertions [] in
support of their motion that there’s no jurisdiction, none of which are supported by any affidavit or any other
evidence….”

 8
Missouri where chief engineer for nonresident corporation met in forum state with appellant to

finalize design of product and chief engineer communicated, on numerous occasions, with

appellant in Missouri by telephone and through e-mails). Second, in his petition, Appellant

asserted that Respondent made false representations to Appellant and used Legacy as part of a

false and fraudulent scheme to defraud Appellant. Specifically, in his affidavit, Appellant

provided that, Respondent falsely represented to Appellant that Legacy had existing contracts,

commitments, and assets, that Legacy was poised to win large new contracts, and that Legacy

was to be imminently funded with hundreds of thousands or millions of dollars. “Where a

defendant knowingly sends into a state a false statement, intended that it should there be relied

upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that

state.” State ex rel. PPG Indus., Inc., 560 S.W.3d 888, 892 (Mo. banc 2018) (quoting Bryant,

310 S.W.3d at 234). Thus, Appellant’s allegations are sufficient to place Respondent within the

reach of Missouri’s long-arm statute.

 Moreover, under the minimum contacts analysis, it is essential that “the defendant’s

conduct and connection with the forum State are such that he should reasonably anticipate being

haled into court there.” World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

When evaluating minimum contacts, our inquiry focuses on whether there is “some act by which

the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws.” Bryant, 310 S.W.3d at 232 (internal

quotations and citation omitted). We also consider the following factors in determining whether a

non-resident defendant has sufficient minimum contacts for a Missouri court to exercise personal

jurisdiction: “(1) the nature and the quality of the contact; (2) the quantity of those contacts; (3)

the relationship of the cause of action to those contacts; (4) the interest in Missouri in providing a

 9
forum for its residents; and (5) the convenience or inconvenience to the parties.” Schilling v.

Human Support Services, 978 S.W.2d 368, 371 (Mo. App. E.D. 1998).

 Here, in addition to contracting with a Missouri law firm, Appellant asserted, in his

affidavit, that Respondent corresponded frequently with Appellant via e-mail and phone

regarding converting the corporate form of Legacy, the creation of an operating agreement for

Legacy, and other related business. In fact, at the hearing, Respondent’s counsel admitted that

Respondent was present in Missouri several times and, during those visits, Appellant made

phone calls to Respondent relating to the contracted legal services. The contacts with Missouri

were all directly related to, and the basis for, Appellant’s cause of action against him. Missouri,

thus, has an interest in providing a forum for Appellant to recover the fees incurred for his

services. See Bryant, 310 S.W.3d at 229–30. Respondent should have anticipated that, by having

false or fraudulent communication relating to the representation of Legacy in this State, he would

be made to answer in a Missouri court. See id. at 236. Therefore, we find Respondent had

sufficient minimum contacts with Missouri to satisfy due process, and for the trial court to

exercise personal jurisdiction over him.

 Point granted.

 V. Conclusion

 For the foregoing reasons, we reverse and remand the judgment of the trial court for

further proceedings consistent with this Opinion.

 _______________________________
 Colleen Dolan, P.J.

Robert M. Clayton III, J., concurs.
Kelly C. Broniec, J., concurs.

 10